(No. 22190.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENNIE MAIONI, Plaintiff in Error.

*Opinion filed February 23, 1934.*

SIMON T. SUTTON, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff in error, Bennie Maioni, was jointly indicted with Patsy DeAngelo, Sam Cerdo and Phillip Spagnola for robbery while armed with a dangerous weapon. Each of the defendants except Maioni entered a plea of guilty. Maioni pleaded not guilty and waived trial by jury. The cause was heard before a judge of the criminal court of Cook county, who found Maioni guilty of larceny and the

value of the property stolen to be $200. Motions for a new trial and in arrest of judgment were overruled and Maioni was sentenced to the reformatory at Pontiac. The case is before us for review on writ of error.

A purchase of clothing, consisting of dresses, coats and suits of clothes amounting to $210.20, was made on November 24, 1931, from L. Klein & Co., 936 West Seventy-sixth street, Chicago. The purchaser directed the merchandise to be delivered C.O.D. to a party named Russo at 1235 West Harrison street on the next afternoon between the hours of 4:30 and 5:00 o'clock. The attention of the superintendent of the store was called to the transaction, and he requested the police department to furnish protection for the delivery of the merchandise. Edward Wiswald, an employee of L. Klein & Co., was directed to accompany the delivery. The evidence for the People showed that about 4:30 in the afternoon of November 25 Wiswald arrived at the apartment building where the goods were to be delivered and inquired for Russo. He was told to go to the second floor of the building. On that floor he was then directed to go to the third floor. When he reached that floor someone told him to take the merchandise to a rear apartment. As he started toward it two men put pistols against his body and told him, "Stick 'em up!" He dropped the merchandise and put up his hands. One of the men (DeAngelo) picked up the package and the other man (Spagnola) searched his pockets. Two men were standing close by, one of whom Wiswald later identified as Maioni. Suddenly police appeared. They flashed a light from the second to the third floor and someone yelled "Police!" DeAngelo dropped the merchandise and the men ran. Cerdo was in advance, Maioni next and the other two men in the rear. When they reached the ground, Maioni, Cerdo and Spagnola went in one direction and DeAngelo in another. The three men first mentioned were stopped and arrested by Sergeant O'Connell and officer

Gabrielson. The report of a revolver was heard and Gabrielson ran around the building, where he helped officer Quirk arrest DeAngelo. A pistol was found on the ground near where three of the men were arrested and a pistol was found in Spagnola's pocket. The prisoners were taken to the police station.

Maioni was identified by Wiswald and police officers Quirk, Gabrielson, O'Connell, Todd and Sovea. The State offered in evidence, and the court admitted, a confession of Maioni as State's "Exhibit 1." According to the testimony of police officers Quirk, Gabrielson and O'Connell it was made at the police station on the afternoon of the arrest. The questions were propounded by Sergeant O'Connell, answered by Maioni and transcribed on the typewriter by O'Connell. The substance of the confession is that Maioni was then nineteen years of age and lived with his mother-in-law, Marie Cozzi, and his wife, Mary; that he was employed at the Ideal Floral Shop, which he claimed was owned by him and his aunt, Clara Masalotti; that on the morning of November 24, a woman by the name of Helen Coloya asked him if he wanted to make some money; that she said there would be a messenger boy deliver some clothes at 1235 West Harrison street and wanted him to get three more boys and grab it; that he (Maioni) made a date to meet her at Loomis and Flournoy streets, where he would throw the merchandise in her car; that he met her by appointment at 3:00 o'clock on the afternoon of the robbery; that she handed him a package and said, "Don't forget to return this when you get through with them; I don't think you will need them, but you can't tell;" that the package contained two guns; that he then went to a pool-room, where he found the men who were afterwards jointly indicted with him; that they went out and sat in his automobile, where he asked them "if they wanted to come on this job with me;" that they agreed, and all of them went to 1235 West Harrison street in his

car; that he took the two guns, which he had placed under the seat of his car, and with his three confederates went up-stairs and stood in the hallway; that they heard some-one cry out, "L. Klein's;" that he (Maioni) said, "Here they are, boys; I will go down and get the car and you get him;" that when he started down the back way he saw the officers; that he waited on the first floor, where his associates joined him, and they all ran until they heard some shots and all four were caught by the policemen.

The defendant does not claim the confession was made in hope of reward or on account of duress, although he does say that at the time of his arrest he was assaulted by the witness Wiswald. He denied that he made any confession, and testified that said questions were not pro-pounded to him nor answered by him. There was, there-fore, no error in the admission of the confession. Whether or not he made it and what credence should be given it were questions for the court.

Maioni admits he was in the building at the time of the robbery and that he was captured while running away from the premises at the time the arrests were made. Ac-cording to his testimony he went to the building because Clara Cozzi told him that one of their customers, the "Greek lady," had requested that he come to see her the next day, as she wanted him to take some medicine and things to eat to her boys at Pontiac. He and Miss Cozzi went to the apartment building at 1235 West Harrison street between 3:00 and 4:00 o'clock in the afternoon to see the Greek lady, whom he knew as Mrs. Pappas. They were in her apartment, drinking coffee and eating cake, when they heard some shots. He jumped up and said, "That's my car," and started to run down the back stairs to his car. On his way down he met some men who were also running, and when they went outside of the building he was arrested with them. He testified that he did not know any of his co-defendants and that he did not partici-

pate in the robbery. Eda Cozzi corroborated his testimony about the request of the Greek lady to have him come to her apartment. So did Clara Cozzi. The latter also testified that he was in the Greek lady's flat at the time the shots were fired and that he thereupon ran out to look after his car. Eva Pappas, thirteen-year-old daughter of Mrs. Pappas, testified that defendant was in her mother's flat until he heard a noise like shots, when he ran out. The testimony of Mrs. Pappas was to the same effect.

The testimony supports the contention of the State that no shots were fired until the four men had fled from the building. This circumstance weighs heavily against the testimony that it was the sound of the shots that made defendant leave Mrs. Pappas' flat to look after his car. The record in this case exhibits no sufficient reason for disturbing the finding of facts made by the trial judge. He saw the witnesses and his opportunity of arriving at a correct conclusion as to the facts was far superior to ours. When all the facts and circumstances of the case are considered it seems to us that the court correctly concluded that the defense interposed was not dependable. Certainly the finding was not against the weight of the evidence.

Counsel for plaintiff in error contends that inasmuch as the indictment charged robbery with a dangerous weapon the court was without power to find plaintiff in error guilty of larceny. The indictment alleged that he and those impleaded with him feloniously and violently made an assault upon Wiswald and did rob, steal, take and carry away from him the described property, belonging to L. Klein. The charge of larceny is included within the allegations of this indictment. *People* v. *Rusk,* 348 Ill. 218.

The record is free from prejudicial error, and the judgment is affirmed.

*Judgment affirmed.*